**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAMAR DOUGLAS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:18-cv-00252** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **RICH KUSTENBAUDER, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the Court is the motion for summary judgment (Doc. No. 63) filed by Defendants Rich Kustenbauder ("Kustenbauder"), Candace Snyder ("Snyder"), William Dreibelbis ("Dreibelbis"), Eric Tice ("Tice"), Dorina Varner ("Varner"), Michael Wenerowicz ("Wenerowicz"), Trever Wingard ("Wingard"), Joseph Silva ("Silva"), Tracy Smith ("Smith"), William Nicklow ("Nicklow"), and the Pennsylvania Department of Corrections ("DOC"). Pro se Plaintiff Lamar Douglas has filed neither a response to the motion nor a motion seeking an extension of time to do so. Accordingly, because the time for filing a response has expired, Defendants' motion for summary judgment is ripe for disposition.

## I. BACKGROUND

Plaintiff, who is currently incarcerated at the State Correctional Institution Phoenix in Collegeville, Pennsylvania ("SCI Phoenix"), initiated the above-captioned action on February 5, 2018, while he was incarcerated at the State Correctional Institution Smithfield in Huntingdon, Pennsylvania ("SCI Smithfield"), by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Kustenbauder, Snyder, Dreibelbis, Tice, Varner, and the Inmate Disability Accommodation Committee. (Doc. No. 1.) On June 15, 2018, Defendants Kustenbauder, Snyder, Dreibelbis, Tice, and Varner filed a motion to dismiss Plaintiff's complaint. (Doc. No. 13.) In a report and recommendation entered February 14, 2019, Magistrate Judge Carlson

recommended granting Defendants' motion to dismiss. (Doc. No. 26.) In an Order dated March 26, 2019, the Court overruled Plaintiff's objections to the report and recommendation, granted the motion to dismiss, and dismissed Plaintiff's complaint without prejudice to his right to file an amended complaint. (Doc. No. 28.)

Plaintiff subsequently moved for an extension of time to file his amended complaint, which the Court granted. (Doc. Nos. 30, 31.) On July 9, 2019, Plaintiff filed a motion to appoint counsel. (Doc. No. 33.) In an Order dated August 15, 2019, the Court conditionally granted Plaintiff's motion to appoint counsel, noting that Plaintiff's "visual impairment and inability to obtain assistance, coupled with the fact that this case cannot proceed without the filing of an amended complaint, support the appointment of counsel for Plaintiff." (Doc. No. 38.) The Court stayed all deadlines for forty-five (45) days to allow time for the Chair of the Federal Bar Association's Pro Bono Committee to attempt to find counsel to represent Plaintiff. (Id.) In an Order dated October 9, 2019, the Court lifted the stay because counsel had not appeared to represent Plaintiff and directed that Plaintiff file his amended complaint within sixty (60) days. (Doc. No. 40.) After receiving another extension of time (Doc. Nos. 44, 45), Plaintiff filed his amended complaint against Defendants Kustenbauder, Dreibelbis, Snyder, Tice, Varner, Wenerowicz, Wingard, Silva, Smith, Nicklow, and the DOC on February 24, 2020. (Doc. No. 46.)

In his amended complaint, Plaintiff alleges that he has "been diagnosed with severe visual impairments, being completely blind in his left eye and limited central, peripheral and acuity vision with medically controlled glaucoma in his right eye." (Doc. No. 46 ¶ 16.) Plaintiff was housed on the Special Needs Unit ("SNU") at SCI Smithfield "with inmates who are diagnosed with psychotic and severe mental disabilities." (Id. ¶ 17.) Plaintiff avers that

Defendant Snyder is the individual who circulated Plaintiff's "prerequisite Vote Sheet to begin the process in classifying Plaintiff as [an] SNU inmate." (Id. ¶ 20.) He maintains that at the time "of initiating [his] classification," Defendants Kustenbauder, Snyder, Dreibelbis, and Tice were aware that the SNU did not have any handicap-accessible cells to accommodate inmates with visual impairments. (Id. ¶ 21.) Plaintiff told Defendants Kustenbauder, Snyder, and Dreibelbis that his cell in the SNU did not have enough space for him to move around freely without a risk of "being prone to tripping, falling, or bumping into the permanent structural fixtures within his living quarters." (Id. ¶ 23.)

On December 10, 2015, Plaintiff submitted an Inmate Disability Accommodation Request Form asking to be transferred to another state prison "better designed for the visually impaired." (Id. ¶ 24.) On January 13, 2016, Plaintiff submitted a Right to Know Law Request to the DOC's Central Office, "seeking information about whether there are any designated state prisons that accommodate inmates with qualified visual impairments." (Id. ¶ 25.) Plaintiff received a response indicating that six (6) state prisons, not including SCI Smithfield, were designated to accommodate such impairments. (Id. ¶¶ 26-27.)

On January 12, 2016, Plaintiff submitted a request to Defendant Dreibelbis asking to be placed in an available handicap cell. (Id. ¶ 28.) Plaintiff avers that Defendant Dreibelbis's response "failed to address any of his concerns" and only stated that his accommodation request had been forwarded to the Central Office's Inmate Disability Accommodation Committee ("IDAC"), consisting of Secretary Wetzel and Defendants Wenerowicz, Wingard, Silva, Smith, and Nicklow. (Id. ¶ 30 & n.2.) On February 9, 2016, Defendant Dreibelbis informed Plaintiff that the IDAC had approved his accommodation request but denied his request to be transferred because SCI Smithfield could accommodate his needs. (Id. ¶ 31.)

On March 21, 2016, Plaintiff submitted a complaint to prison officials regarding the failure to accommodate his visual impairment. (Id. ¶ 32.) Plaintiff averred that the only inmates available to assist him were those with severe mental diagnoses or physical impairments of their own. (Id.¶¶ 32-33.) Plaintiff maintains that Defendants were aware that his housing on the SNU did not appropriately accommodate his visual impairment and that he experienced injuries from "blindly navigating around the permanent physical obstacles normally designed into the general population cells." (Id. ¶¶ 34-36.) Plaintiff alleges that he was sent to the medical department for emergency treatment after sustaining injuries to his wrist and forearm on January 20, 2017. (Id. ¶ 37.)

Plaintiff subsequently requested to be enrolled in available education programs for visually impaired inmates. (Id. ¶ 41.) Mrs. Laid, the corrections principal, informed Plaintiff that SCI Smithfield did not have any such programs. (Id. ¶ 42.) On January 5, 2017, Plaintiff asked Defendant Dreibelbis for a stronger magnifying glass for reading. (Id. ¶ 43.) Plaintiff was subsequently informed that stronger magnifying classes were not available. (Id. ¶ 44.) On January 31, 2017, Plaintiff submitted a complaint to prison officials arguing that he was being denied reasonable accommodations. (Id.¶ 46.) Plaintiff claimed that he was at heightened risk for injuries and that he had learned that the four (4) handicap accessible cells on I Block were not being used to house inmates with qualified handicaps. (Id. ¶¶ 47-49.) Defendant Dreibelbis denied Plaintiff's request to be housed in a handicap accessible cell and "only requested suggestions from Plaintiff to improve his SNU cell conditions." (Id. ¶¶ 50-52.) Plaintiff appealed the denial to Defendant Tice, who denied the appeal. (Id. ¶¶ 53, 56.) Defendant Varner referred Plaintiff's subsequent appeal to the Bureau of Health Care Services. (Id. ¶ 58.) Plaintiff's appeal for final review was denied on June 13, 2017, "on the grounds that the Bureau

of Health Care Services reviewed the medical records and Plaintiff's current housing accommodations, and determined everything was appropriate for his severe visual impairment." (Id. ¶ 59.) Plaintiff filed another complaint on May 29, 2017, which was denied at all levels. (Id.¶¶ 60-64.)

Plaintiff avers that his housing assignment caused him to be assaulted by another inmate. (Id. ¶ 87.) He alleges that on June 7, 2017, he was sitting at a table talking with other inmates when inmate Montgomery approached in an aggressive manner and asked Plaintiff "why he didn't apologize for bumping into him at pill line." (Id. ¶ 79.) Plaintiff claims that Corrections Officer Snyder failed to intervene even though he was sitting at his desk. (Id. ¶ 80.) Plaintiff returned to his cell, and inmate Montgomery began assaulting him from behind. (Id. ¶ 81.) Plaintiff avers that Corrections Officer Snyder finally intervened but issued a misconduct report to Plaintiff for defending himself. (Id. ¶ 84.) Plaintiff believes that Correctional Officer' Snyder's conduct "was intended to send a message and punish [him] for exercising his First Amendment right to commence this civil rights [complaint]."[1] (Id.)

Based on the foregoing, Plaintiff asserts violations of his Fourteenth Amendment due process and equal protection rights, his Eighth Amendment rights, and his rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.[2] (Id. ¶¶ 100-16.) Plaintiff seeks declaratory and injunctive relief as well as damages. (Id. at 29.)

---

[1] Although Plaintiff appears to suggest that Corrections Officer Snyder violated his Eighth Amendment rights by failing to protect him from inmate Montgomery's assault and his First Amendment rights by retaliating against him, Plaintiff has not named Corrections Officer Snyder as a Defendant in the above-captioned case, and his claims for relief do not include a First Amendment retaliation claim and an Eighth Amendment failure to protect claim.

[2] Plaintiff also references the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq. (Doc. No. 1 at 1-2.) Section 3 of the RLUIPA provides, in relevant part, that "[n] government shall impose a substantial burden on the religious exercise of a person

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the

---

residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling interest" and does so by the "least restrictive means." See 42 U.S.C. § 2000cc-1(a)(1)-(2). Plaintiff's amended complaint, however, is completely devoid of any facts suggesting how Defendants substantially burdened his religious exercise.

nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No.

02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## III. STATEMENT OF MATERIAL FACTS[3]

Plaintiff was incarcerated at SCI Smithfield at "all times underlying this action." (Doc. No. 69 ¶ 1.) He is no longer housed at SCI Smithfield. (Id. ¶ 2.) Plaintiff is visually impaired. (Id. ¶ 3.) While incarcerated at SCI Smithfield, Plaintiff "filed various grievances related to issues with his visual impairment." (Id. ¶ 4.) "These grievances object[ed] to his placement at SCI Smithfield, among other issues." (Id.) The grievances "were answered appropriately, frequently indicating that Plaintiff's medical treatment and placement were both appropriate and within policy." (Id. ¶ 5.) Plaintiff submitted an accommodation request under the ADA "that requested, among other things, a transfer to another institution, claiming that SCI Smithfield was not suitable in his own estimation." (Id. ¶ 6.) Responses to Plaintiff's request indicated that SCI Smithfield "was deemed suitable to meet Plaintiff's needs." (Id. ¶ 7.) "The Special Needs Unit is for inmates with special medical or mental health needs." (Id. ¶ 8.)

[3] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of facts. (Doc. No. 69.) Plaintiff has not filed a response to Defendants' statement of material facts in compliance with Local Rule 56.1. Accordingly, the Court deems the facts set forth by Defendants to be undisputed. See Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; United States v. Alberto, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that the "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

## IV. DISCUSSION

### A. Claims Pursuant to 42 U.S.C. § 1983

#### 1. Fourteenth Amendment Claims

##### a. Due Process

The Fourteenth Amendment's Due Process Clause prohibits states from denying individuals "life, liberty[,] or property" without due process of law. See U.S. Const. amend. XIV. In analyzing a procedural due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." See Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). Procedural due process protection, however, "for a state created liberty interest . . . is limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" See Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Moreover, "[a] claim alleging a substantive due process violation requires a showing of behavior that can 'properly be characterized as arbitrary, or conscience shocking.'" See Turner v. Att'y Gen. Pa., 505 F. App'x 95, 99 (3d Cir. 2012) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)).

In his amended complaint, Plaintiff avers that he "has a fundamental right to the process that is provided by the PA DOC under policies, regulations, and procedures for requesting a reasonable accommodation for qualified disabilities under the ADA." (Doc. No. 46 ¶ 67.) He asserts that he has been denied access to reasonable accommodations through refusal of his request to be housed in an "ADA accredited handicap accessible cell." (Id. ¶ 91.) Plaintiff suggests that he has been "subjected to atypical and significant hardship due to being forced to

blindly navigate within the interior of his cell that is not ADA accredited as handicap accessible for individuals with severe visual impairment." (Id. ¶ 92.)

Upon review of the record, the Court concludes that Plaintiff has presented no evidence creating a genuine issue of material fact as to whether Defendants violated his procedural and substantive due process rights. As the Court previously informed Plaintiff, "[t]he fact that the DOC has a policy for inmates to follow when seeking an ADA accommodation does not create a liberty interest in receiving such a response pursuant to that policy." See Rivera v. Rendell, No. , 2013 WL 1339273, at *11 (M.D. Pa. Apr. 1, 2013) (citing Brooks v. Horn, No. 00-3637, 2004 WL 764385 (E.D. Pa. Apr. 7, 2004)). Thus, Defendants did not violate his due process rights in failing to grant his ADA request to be transferred to another institution. See id. Moreover, housing decisions do not trigger due process protection. See McKune v. Lile, 436 U.S. 24, 39 (2002); Cotton v. Damiter, No. 4:19-cv-1359, 2020 WL 5232068, at *4 (M.D. Pa. Sept. 2, 2020). "An inmate does not have a right to be placed in the cell of his choice." Sheehan v. Beyer, 51 F.3d 1170, 1174 (3d Cir. 1995). Plaintiff's allegations are insufficient to suggest that Defendants subjected him to atypical and significant hardship by housing him in a cell at the SNU at SCI Smithfield. See Montgomery v. Crane, No. 18-cv-2911, 2020 WL 2857394, at *6 (D. Colo. May 7, 2020) (concluding that the inmate-plaintiff's conclusory allegations that his place of incarceration was not ADA-complaint did not adequately plead atypical and significant hardship); Jenkins v. Drake, No. 19-5656, 2020 WL 2771999, at *11 (C.D. Cal. May 5, 2020) (concluding that the inmate-plaintiff's transfer to a "non-ADA" housing dorm did not impose atypical and significant hardship"). The Court, therefore, will grant Defendants summary judgment as to Plaintiff's Fourteenth Amendment due process claim.

**b. Equal Protection**

The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Traditionally, "[i]n order to establish a prima facie case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals." See Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2002).

However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim. See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008). To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment. See id. "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Mosca v. Cole, 217 F. App'x 158, 164 (3d Cir. 2007). When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice. See Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005) (citing Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)).

In the instant case, Plaintiff does not state that he is a member of a protected class. Indeed, neither prisoners nor disabled individuals are protected classes of individuals. See City of Cleburne, 473 U.S. at 439 (noting that disabled individuals are not a suspect class); Abdul-

Akbar v. MeKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (concluding that prisoners are not a suspect class). In his amended complaint, Plaintiff avers that he learned that Defendant Dreibelbis "continuously grants other inmates similarly situated with qualified physical disabilities their requests for handicap accessible housing that is ADA accredited that provides enough unencumbered space to accommodate their needs." (Doc. No. 46 ¶ 72.) Plaintiff has presented no evidence, however, suggesting that Defendants intentionally treated Plaintiff differently from other inmates or treated other inmates more favorably in any respect. Plaintiff's allegations that his equal protection rights were violated are simply "bald assertions" that fail to allege "occasions and circumstances" of different treatment. See Young, 160 F. App'x at 266. The Court, therefore, will grant Defendants' motion for summary judgment with respect to Plaintiff's Fourteenth Amendment equal protection claim.[4]

**2. Eighth Amendment Claim**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; and the use of excessive force by prison guards. An Eighth Amendment claim includes both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. See

[4] In any event, the "Equal Protection Clause does not require States to make special accommodations for the disabled under the standard of rational basis review." See Cypher v. California Univ. of Pa., 914 F. Supp. 2d 666, 667 n.1 (W.D. Pa. 2012); see also Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 368 (2001) (noting that "if special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause").

id. The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." See id.

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2015). "[T]he Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." See id. at 347. Such necessities include "adequate food, clothing, shelter, and medical care." See Farmer, 511 U.S. at 832. Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." See Hudson, 503 U.S. at 9.

In his amended complaint, Plaintiff alleges that Defendants have violated his Eighth Amendment rights by demonstrating "deliberate indifference to his heighten[ed] risk to serious slip and fall injuries, since he is being housed in a cell that is not handicap accessible and that he is being forced to navigate the structural obstacles normally designed in general population housing." (Doc. No. 46 ¶ 48.) He suggests that his classification as a SNU inmate is unreasonable because the "purpose for the SNU is to only safely house those inmates with mental impairment away from other inmates." (Id. ¶ 96.) While Plaintiff alleges that on one occasion he tripped, fell, and hit his head on the fixtures, causing injuries to his head, wrist, and forearm, a slip and fall, without more, does not amount to cruel and unusual punishment. See Ashford v. Hawkinberry, No. 2:14-cv-1718, 2016 WL 3156483, at *5 (W.D. Pa. June 2, 2016).

Rather, the record before the Court establishes that SCI Smithfield, and Plaintiff's housing assignment therein, was suitable for his visual impairment. The record indicates that on May 8, 2015, the Bureau of Health Care for the DOC directed that "any prototypical institution including SCI-Smithfield can house any visually impaired inmate." (Doc. No. 69-1 at 26.) Moreover, as of February 18, 2016, Plaintiff was being housed in a "single cell with the bed being placed against the wall." (Id. at 57.) The record before the Court indicates that in the six (6) months prior to July 19, 2016, Plaintiff had reported falling on only two (2) occasions. (Id. at 117.) Furthermore, the record suggests that the cells in I unit, to which Plaintiff refers as being handicap-accessible, are designed for inmates with mobility impairments and would not have improved Plaintiff's situation. (Id. at 137.) By failing to respond to Defendants' motion, Plaintiff has not presented evidence creating a genuine issue of material fact suggesting that Defendants were deliberately indifferent to a substantial risk to his health and safety by housing him in a cell in the SNU at SCI Smithfield. See Bistrian, 696 F.3d at 367. Accordingly, the Court will grant summary judgment to Defendant with respect to Plaintiff's Eighth Amendment claim.

**B. Claims Pursuant to the ADA and the Rehabilitation Act**

In his amended complaint, Plaintiff avers that Defendant DOC discriminated against him and excluded him from "participating in programs, activities, and services for which he was qualified" because of his disabilities. (Doc. No. 46 ¶¶ 109-16.) Defendants maintain that they are entitled to summary judgment because Plaintiff has failed to state cognizable claims under both the ADA and the Rehabilitation Act. (Doc. No. 68 at 23-27.)

Title II of the ADA, "which prohibits 'a public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability, covers inmates

in state prisons." See Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 208 (1998) (quoting 42 U.S.C. §§ 12141 & 12132). The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." See 29 U.S.C. § 794(a). The Third Circuit has explained that "[t]he substantive standards for determining liability under the Rehabilitation Act and the ADA are the same." See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 275 (3d Cir. 2014) (quoting Ridley Sch. Dist. v. M.R., 680 F.3d 260, 282-83 (3d Cir. 2012)). Therefore, to maintain a claim under either the ADA or the Rehabilitation Act, Plaintiff must demonstrate "that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." See Furgess v. Pa. Dep't of Corr., 933 F.3d 285, 288-89 (3d Cir. 2019).

Defendants assert that Plaintiff's claims for prospective injunctive relief under the ADA and Rehabilitation Act are now moot because of Plaintiff's transfer from SCI Smithfield. (Doc. No. 68 at 25 n.4.) The Court agrees with Defendants. See Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) (noting that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims" for relief); see also Reaves v. Dep't of Corr., 392 F. Supp. 3d 195, 210 (D. Mass. 2019) (concluding that the inmate-plaintiff's transfer mooted his claims pursuant to Title II of the ADA and the Rehabilitation Act). The Court, therefore, will grant Defendants summary judgment with respect to Plaintiff's claims seeking prospective injunctive relief under the ADA and the Rehabilitation Act.

As noted supra, Plaintiff also seeks compensatory and punitive damages. Punitive damages, however, are not available under Title II of the ADA and section 504 of the

Rehabilitation Act. See Bowers v. Nat'l Collegiate Athletic Ass'n, 346 F.3d 402, 429 (3d Cir. 2003) (citing Barnes v. Gorman, 536 U.S. 181, 187 (2002)). To receive compensatory damages, however, Plaintiff must demonstrate "intentional discrimination under a deliberate indifference standard." See Furgess, 933 F.3d at 288-89. The "definition of deliberate indifference in the . . . ADA context is consistent with [the] standard of deliberate indifference in the context of § 1983 suits by prison inmates." See S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 263 (3d Cir. 2013). Thus, to show deliberate indifference, Plaintiff must allege that the DOC "(1) had 'knowledge that a federal protected right is substantially likely to be violated,' and (2) failed 'to act despite that knowledge.'" See Snider v. Pa. DOC, --- F. Supp. 3d ---, 2020 WL 7229817, at *19 (M.D. Pa. Dec. 8 2020) (quoting Geness v. Admin. Office of Pa. Courts, 974 F.3d 263, 274 (3d Cir. 2020)). As discussed above, however, Plaintiff has not submitted evidence suggesting that the DOC, through its employees, were deliberately indifferent to his needs. The Court, therefore, will grant summary judgment with respect to Plaintiff's damages claims pursuant to the ADA and the Rehabilitation Act.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment. (Doc. No. 63.) An appropriate Order follows.